In the fifth year of the State.

————o ⊘ o————

PRESENT:

HON. JOSEPH WILLIAMS, CHIEF JUSTICE.
" JOHN F. KINNEY, } JUDGES.
" GEORGE GREENE, }

————o ⊘ o————

### Collins & Co. v. Rodolph.

A mere statement of the plaintiff's cause of action sufficient before a justice of the peace, without filing the transcript of judgment, upon which suit was commenced.

A discharge under the insolvent laws of a State do not bar to a non-resident creditor who did not consent to the discharge, nor is such non-resident creditor barred from his action by having appeared and contested the proceedings in insolvency.

### Error *to Dubuque District Court.*

*Opinion by* Kinney, J. Collins & Company sued the defendant in an action of debt before a justice of the peace,

Collins *v.* Rodolph.

and filed the following claim as their cause of action:
" Plaintiffs claim one hundred dollars their due on judg-
ments rendered against said Rodolph, Iowa county, Wis-
consin, before John P. Tramel, a justice of the peace, in
February, 1848." The same day on which the claim was
filed one of the plaintiffs filed an affidavit, on which a writ
of attachment was issued. On the day of trial two tran-
scripts of judgments were filed, duly certified and authenti-
cated, by which it appeared that two several judgments
were recovered by the plaintiffs against the defendant
before John P. Tramel, a justice of the peace, in Iowa
county, Wisconsin. The defendant moved to quash the writ
of attachment because: 1st. There was not sufficient
account filed previous to the issue of said writ. 2nd.
Because of the insufficiency of the affidavit. On this
motion the justice quashed the writ and dismissed the pro-
ceedings at the costs of the plaintiffs. From this decision
of the justice the plaintiffs appealed to the district court.

In that court a similar motion was made by the defend-
ant, and it appears from the bill of exceptions that the court
sustained the motion and quashed the writ, on the ground
that the transcripts should have been filed at the time of
the suing out of the writ of attachment, and that it was not
sufficient to file a statement as was done in this case with-
out the transcripts being filed at the time of the commence-
ment of the action. This decision of the court below the
plaintiffs contend is erroneous.

The statute under which the writ of attachment was
issued, after enumerating the conditions upon which a writ
of attachment may be sued out by a creditor, provides that
" any such creditor wishing to sue his debtor by attachment
may apply to any justice of the peace, who would have
jurisdiction of the debt, if the suit was brought in the com-
mon form, and if the cause of action be a bond or note,
shall file the same with the justice; and if it be any other

Collins *v.* Rodolph.

kind of a contract, shall file with the justice a plain intelli-
gible account or statement thereof," &c.  Rev. Stat. 339, § 2.

It was not necessary in this case for the plaintiffs to have
filed their transcripts in the first instance before the writ
could issue.  The statute embraces only those causes of
action which are founded on bonds or notes, and when either
a bond or note constitute the foundation of the action, such
bond or note must be filed with the justice before the attach-
ment can be sued out.  These being the only instruments
necessary to file, it follows that if the action is based upon
any other cause of action this provision in relation to notes
and bonds is not applicable.

The statute cannot be extended so as to include other
obligations than those enumerated.  That which constituted
the cause of action in the case under consideration was
neither a note nor a bond, hence it was not incumbent upon
the plaintiffs to file it as a condition to the issuing of the
writ.  .The statement of the cause of action filed with
the justice was in strict compliance with the statute, and
consequently the court erred in quashing the writ by reason
of the transcripts not having been filed with the justice
before the attachment issued.

It appears from a separate transcript sent up to this court
that by agreement of parties the issues of law and fact
were submitted to the court, whereupon the judgment was
rendered in favor of the plaintiffs upon the judgments ren-
dered on the notes, which constituted the original founda-
tion of the actions against the defendants.  The following
agreement was filed in the court below, and made part of
the record: "It is agreed by the parties, in submitting this
case to the court, that the plaintiffs are, and always have
been, residents of Galena, Illinois, and never have been
residents of Wisconsin; that the notes appended to the tran-
scripts are the identical notes upon which suits were brought
in Wisconsin, and upon which transcripts on file have been
issued and judgments rendered; that the notes aforesaid

are the identical notes mentioned in the discharge under the insolvent laws in Wisconsin, a copy of part of the record of which is on file, as far as the names of the plaintiffs appear, or the interests of the plaintiffs are concerned." It appears also from a record of the probate court of the county of Iowa, Wisconsin, filed in the court below, that by a proceeding under the insolvent laws of that state that the defendant was on the 23d day of December, 1848, discharged from all his debts, including the claims of the plaintiffs in this suit, and also that the plaintiffs appeared by counsel and resisted such discharge. This discharge was pleaded in bar of the plaintiffs' action, but was overruled by the court, and decided to be no bar, whereupon a judgment was rendered in favor of the plaintiffs upon the transcripts aforesaid. This decision the defendant, by consent of plaintiffs' counsel, assigned for error.

Upon the facts presented in this case, two questions naturally arise:

1st. Will a discharge under the insolvent laws of a particular state bar debts contracted in another state, the creditor not being a resident of the state where such discharge was obtained? If not, then, 2d. Does the creditor abandon his extra-territorial immunity by appearing and contesting the discharge of the insolvent debtor?

This first question underwent an able examination in the case of *Watson* v. *Bourne,* 12 Mass. 386. This was an action of debt, brought upon a judgment rendered in the court of common pleas, for the county of Kent, in the state of Rhode Island. The defendant pleaded in bar a discharge under the insolvent laws of that state; to which the plaintiff replied, that at the accruing of the debt, and at the time of the proceeding under the insolvent laws, and the rendition of the judgment on which the action was brought, he was, and ever since had been, a citizen of the commonwealth of Massachusetts. To this replication the defendant demurred. The demurrer was overruled and the

Collins *v.* Rodolph.

replication adjudged good. It was held that a discharge could only operate where the law was made by an authority common to the creditor in all respects; where both are citizens and subjects. The same doctrine obtained in the case of *Mason* v. *Wash*, 1 Breeze 17. See also cases of *Burton* v. *Wallack*, 8 Pick. 186; *Witt* v. *Follett*, 2 Wend. 457; *Norton* v. *Cook*, 9 Conn. 314. A large number of authorities might be cited in support of the doctrine laid down in the case of *Watson* v. *Bourne*, but we consider it unnecessary. Wherever this question has been presented the courts, with but few exceptions, have held that debts in another state were not barred by a discharge under the insolvent laws where the debtor resides. These laws are local. They are made for the relief of the citizen, residing within the territorial limits of the state which enacts them, and they cannot be made to effect the rights of the citizens of other states. The creditor residing in the foreign state cannot enjoy the advantages which they confer, neither can he be prejudiced by proceedings under them. As he does not constitute a part of the sovereignty of the commonwealth, he cannot consent to their enactments, and is not bound by their provisions. The civil process of the court cannot reach him, nor can he be compelled by any proceeding which the state may institute to file his claims and receive a *pro rata* dividend of the assets of the debtor. The state has no right to pass any law by which the contracts of a citizen of a sister soverignty shall be absolved, nor can any published notice affect his rights as a party to a contract in another state. The general rule is that a state bankrupt law, as it *prima facia* does impair the obligation of contracts, is unconstitutional and void, and that this effect is avoided only in case the debtor and creditor, the contracting parties, are domiciled in the state where such law already exists at the time of the contract. *Agnew* v. *Platt*, 15 Pick. 417. The territorial immunities of the citizens of one state cannot be affected or impaired by the

legislation of a state of which he is not a resident. But it may be said that a state has the right to pass statutes of limitation so as to operate upon contracts in the hands of nonresidents. If this is so, it is no argument against the doctrine here laid down. In that case the statute does not impair the *right*; it only prescribes a time in which the creditor must bring his action, and if it is not brought within the time limited, payment is presumed.

On this branch of the subject then, we have no hesitation in coming to the conclusion that the discharge under the insolvent laws of Wisconsin would not bar the plaintiff's right to recover, he being a resident of the state of Illinois, at the time the contract was made and the discharge in insolvency obtained.

We now come to the next branch of this case. Did the plaintiff's abandon their extra territorial immunities by appearing and contesting the defendant's right to a discharge? To a satisfactory solution of this question we have only to look into the authorities, which, if not so full and uniform, are still entirely satisfactory.

In the case last referred to it was contended by counsel for defendant that as the plaintiff, who was a non-resident, was one of the petitioning creditors, he made the proceeding and the discharge under it valid and effectual by his personal act, when it would not have been so by the force of law. But the court say, " it being void as a legal proceeding, his assent could not make it good as a contract *in pais* on several grounds; not as a ratification, because the whole proceeding was without legal authority and void, and there was nothing to ratify, as in *Kimberly* v. *Ely*, 6 Pick. 444; nor as a new contract, because it cannot be inferred from the act of petitioning that he intended to renounce or waive his legal rights, any further than that effect would be produced by the legal effect and operation of the proceeding itself."

Collins *v.* Rodolph.

Emanating, as this authority does, from a highly respectable tribunal, it is entitled to much weight. But if the plaintiffs, in the case under consideration, had *petitioned* for the discharge of the defendant, we would be inclined to the opinion that such discharge would bar the claim unless other authorities could be produced in support of the one last quoted. But it will be recollected that they appeared to oppose the discharge, and filed their objections on the ground that they were citizens of Illinois, and no proceeding in insolvency in Wisconsin could operate as a bar to their contract. But if a petitioning creditor's debts are not absolved by a discharge in insolvency in the state where he is not domiciled a *fortiori* a contesting creditor's debts certainly would not be.

In the case of *Norton* v. *Cook*, 9 Conn., 314, it was held that, although the creditor a citizen of Connecticut, with the debtor appeared in New York before the judge, by whom the petition was tried at a time appointed, and both parties were fully heard thereon, the certificate of discharge would be no bar to an action in favor of the citizen of Connecticut upon a contract made in New York. If the creditor petitions for a discharge and receives a *pro rata* share of the property of the bankrupt we are inclined to the opinion, that he could not afterwards maintain an action against the debtor on a pre-existing contract or debt. In such case the law could presume not only consent to the discharge, but a satisfaction of debt, by becoming party to the proceedings and receiving the dividend to which he was entitled.

This appears to be the purport of the decision in the case of *Clay* v. *Smith*, 3 Peters, 411, so confidently relied upon by counsel for defendant. Smith was a citizen of Kentucky, and Clay of Louisiana. The latter obtained his discharge and Smith received ten per cent., the dividend declared by the assignee of the bankrupt. Smith voluntarily made himself a party to the proceedings by petitioning

20

with other creditors for the discharge of Clay, and receiving his *pro rata* dividend of the assets. The question before the supreme court was, whether Smith, by voluntarily making himself party to such proceedings, had not abandoned his extra territorial immunity from the operation of the bankrupt laws of Louisiana.

The court were of the opinion that he had, and was bound by the decision of the state court to the same extent to which the citizens of that state were bound.

This decision chief justice Shaw takes occasion to review in the case of *Agnew* v. *Platt*, before referred to, in which he says that the case is very briefly reported, the facts are not fully stated, and no reasons assigned. Whether it is the deliberate decision of the supreme court or not, it cannot be an authority in favor of the defendant in this case. By adopting the decision to the fullest extent it cannot be made applicable to the facts in the case at bar.

The plaintiffs were not petitioners, nor is there any evidence that they received their *pro rata* share of the bankrupt's estate.

They contested the defendant's discharge, but by doing this they did not waive or abandon any of their rights as non-resident creditors. The case of *Field* v. *Howland*, 17 John. 85, cited by the counsel for the defendant arose between two citizens residents of the state of New York, and the only question decided was that the conduct of the plaintiff's attorney on the trial in bankruptcy was equivalent to an abandonment of his suit. The court granted a motion to set aside an execution issued after the discharge, and also a perpetual stay of the execution on the judgment.

We have not been able, after much examination, to find a single adjudged case to the effect that an appearance on the part of a non-resident creditor merely to contest the insolvent's discharge will waive his rights as a citizen of another state, or jeopardize the collection of his debts. We are, therefore, of the opinion that the court did not err in

overruling the plea of the defendant, and in entering judgment against him.

The decision of the court, quashing the writ of attachment and ordering a restitution of the property to the defendant is reversed at his costs. But the decision of the court rendering judgment upon the transcripts and notes is affirmed.

*P. & J. M. Smith,* for plaintiffs in error.

*L. A. Thomas,* for defendant.